No. 25-3125

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| ALAN CROSS, individually and on behalf of all those similarly situated, | ) | Appeal from the United States District Court for the Central District of Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 3:23-cv-3165 |
| | ) | |
| BRENDAN KELLY, in his official capacity as Director of the Illinois State Police, | ) | The Honorable COLLEEN R. LAWLESS, |
| Defendant-Appellee. | ) | Judge Presiding. |

**BRIEF OF DEFENDANT-APPELLEE**


**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendant-Appellee
Brendan Kelly

**MATTHEW J. FREILICH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-1667 (office)
(773) 519-2935 (cell)
Matthew.Freilich@ilag.gov

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED FOR REVIEW ........ 3

STATEMENT OF THE CASE ........ 4

The Registration Act ........ 4

This Action ........ 7

SUMMARY OF THE ARGUMENT ........ 10

ARGUMENT ........ 12

I. Section 2(E-10) complies with the Equal Protection Clause. ........ 13

A. Rational basis review applies. ........ 13

B. Section 2(E-10) passes rational basis review. ........ 17

II. Section 2(E-10) complies with the Due Process Clause. ........ 24

CONCLUSION ........ 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

### Cases

*A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*,
75 F.4th 760 (7th Cir. 2023) .......... 13

*Armour v. City of Indianapolis*,
566 U.S. 673 (2012) .......... 15, 22

*Califano v. Jobst*,
434 U.S. 47 (1977) .......... 18

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
24 F.4th 640 (7th Cir. 2022) .......... 23

*Chatman v. Bd. of Educ. of Chi.*,
5 F.4th 738 (7th Cir. 2021) .......... 12, 25

*Christensen v. County of Boone*,
483 F.3d 454 (7th Cir. 2007) .......... 7

*City of Richmond v. J.A. Croson Co.*,
488 U.S. 469 (1989) .......... 14

*Conn. Dep't of Pub. Safety v. Doe*,
538 U.S. 1 (2003) .......... 24, 25, 26

*Doe v. Peterson*,
43 F.4th 838 (8th Cir. 2022) .......... 19, 20, 21

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993) .......... 15, 19

*Harnishfeger v. United States*,
943 F.3d 1105 (7th Cir. 2019) .......... 12

*Heller v. Doe ex rel. Doe*,
509 U.S. 312 (1993) .......... 14

*Hope v. Comm'r of Ind. Dep't of Corr.*,
66 F.4th 647 (7th Cir. 2023) .......... *passim*

*Hope v. Comm'r of Ind. Dep't of Corr.*,
9 F.4th 513 (7th Cir. 2021) .......... 16, 23

*Hope v. Comm'r of Ind. Dep't of Corr.*,
984 F.3d 532 (7th Cir. 2021) .......... 15, 22

*Johnson v. California*,
543 U.S. 499 (2005) .......... 13

*Kitterman v. City of Belleville*,
66 F.4th 1084 (7th Cir. 2023) .......... 25

*Lopez-Ramos v. Barr*,
942 F.3d 376 (7th Cir. 2019) .......... 23

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 24

*Moore v. W. Ill. Corr. Ctr.*,
89 F.4th 582 (7th Cir. 2023) .......... 12

*Murphy v. Rychlowski*,
868 F.3d 561 (7th Cir. 2017) .......... 24, 25

*Ostrowski v. Lake County*,
33 F.4th 960 (7th Cir. 2022) .......... 15

*Pryor v. Brennan*,
914 F.2d 921 (7th Cir. 1990) .......... 20, 22

*Quinn v. Millsap*,
491 U.S. 95 (1989) .......... 18

*Rodgers v. Rankin*,
99 F.4th 415 (7th Cir. 2024) .......... 16

*Ruiz v. Pritzker*,
162 F.4th 886 (7th Cir. 2025) .......... 14, 21

*Schepers v. Comm'r, Ind. Dep't of Corr.*,
691 F.3d 909 (7th Cir. 2012) .......... 25

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*,
919 F.3d 1003 (7th Cir. 2019) .......... 15, 18, 23

*United States v. Virginia*,
518 U.S. 515 (1996) .......... 13

*Williamson v. Lee Optical of Okla. Inc.*,
348 U.S. 483 (1955) .......... 15

*Wis. Educ. Ass'n Council v. Walker*,
705 F.3d 640 (7th Cir. 2013) .......... 14, 23

*Wood v. Sec. Credit Servs., LLC*,
126 F.4th 1303 (7th Cir. 2025) .......... 12

**Statutes**

20 ILCS 2605/2605-45 .......... 4

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 2107 .......... 2

42 U.S.C. § 1983 .......... 1

720 ILCS 5/11-9.4-1 .......... 4

730 ILCS 150/2 .......... *passim*

730 ILCS 150/3 .......... 4, 9

730 ILCS 150/3-5 .......... 9

730 ILCS 150/7 .......... 4, 6

730 ILCS 150/8 .......... 4

730 ILCS 152/115 .......... 4

Minn. Stat. § 243.166 .......... 6

Mo. Rev. Stat § 566.101 .......... 7

Mo. Rev. Stat § 589.400 .......... 7

Mo. Rev. Stat § 589.414 .......... 7

Tex. Code Crim. Proc. Ann. art. 62.001 .......... 6

Tex. Code Crim. Proc. Ann. art. 62.051 .......... 6

**Other Authorities**

7th Cir. R. 28 .......... 1

Fed. R. App. P. 4 .......... 2

Fed. R. Civ. P. 56 .......... 2, 12

Fed. R. Civ. P. 58 .......... 2

Ill. P.A. 91-48 .......... 4

Ill. P.A. 97-578 .......... 5

U.S. Const. amend. XIV .......... 13, 24

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' jurisdictional statement is not complete and correct. As required by 7th Cir. R. 28(b), Defendant-Appellee Brendan Kelly, in his official capacity as Director of the Illinois State Police, provides this statement.

Plaintiff-Appellant Alan Cross filed a complaint in the district court under 42 U.S.C. § 1983 against Kelly on behalf of a proposed class of all Illinois residents classified as "sexual predators" under section 2(E-10) of the Illinois Sex Offender Registration Act, 730 ILCS 150 ("Registration Act"), "solely because they were convicted of an offense in another [S]tate" and who would have been classified only as "sex offenders" had they committed their offenses in Illinois. Doc. 1 at 6.[1] Cross claimed that section 2(E-10) violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. *Id.* at 8-9. He sought declaratory and injunctive relief against section 2(E-10)'s enforcement, attorney fees, and costs. *Id.* at 9-10. The district court had subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it raised a federal question.

On September 30, 2024, the district court certified a class of "adult offenders residing in Illinois who are currently or in the future classified as 'sexual predators'

---

[1] The district court docket, which is the record on appeal, is cited as "Doc. __." Plaintiffs' opening brief is cited as "AT Br. __," and the appendix to their brief is cited as "A__."

on the Illinois Sex Offender Registry pursuant to 730 ILCS 150/2(E-10) solely because they were convicted of an offense in another [S]tate." Doc. 37 at 12.

On October 31, 2025, the district court granted Kelly's motion for summary judgment under Fed. R. Civ. P. 56, A1-14, thereby disposing of all claims against all parties. On November 3, 2025, a separate judgment was entered on the district court docket pursuant to Fed. R. Civ. P. 58. A15. No motion to alter or amend the judgment was filed.

On November 21, 2025, plaintiffs filed a notice of appeal. *See* Doc. 45. The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry. This court has jurisdiction over plaintiffs' appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether section 2(E-10) violates the Equal Protection Clause by differentiating between sex offenders whose registration duties arose in Illinois and those whose registration duties arose in other States.

2. Whether section 2(E-10) violates the Due Process Clause by designating those with duties to register as sex offenders in other States as "sexual predators" under Illinois law.

## STATEMENT OF THE CASE

### The Registration Act

The Registration Act requires a "sex offender" or "sexual predator" to register with their local police department after establishing residence in an Illinois county. 730 ILCS 150/3. The local police department enters the information that the offender provides during registration into a statewide data system. *Id.* § 8; *see* 20 ILCS 2605/2605-45(a)(1). The State Police then use that information to create and maintain a statewide registry of sex offenders and sexual predators who reside in Illinois. 730 ILCS 152/115(a).

A sex offender includes any person charged with and convicted of a "sex offense," which means a violation of any Illinois statute listed in section 2(B) of the Registration Act. 730 ILCS 150/2(A)(1)(a), 2(B). A sex offender generally is subject to a 10-year registration duty starting from the date of their parole, discharge, or release from incarceration, or for those not incarcerated, from the date of their conviction or adjudication. *Id.* § 7.

In 1999, the Illinois General Assembly created a subclass of sex offenders called "sexual predator[s]." *See* Ill. P.A. 91-48 (eff. July 1, 1999). A sexual predator includes any person convicted of an offense listed in sections 2(E) or 2(E-5) of the Registration Act, which mostly comprise a subset of more serious sex offenses. *See* 730 ILCS 150/2(E)(1), 2(E-5). Additionally, a person convicted of a "second or subsequent" registrable offense is considered a sexual predator. *Id.* § 2(E)(5). A sexual predator must register for life, *id.* § 7, and may not knowingly enter or loiter near a public park, 720 ILCS 5/11-9.4-1.

Before 2012, any person convicted in another State, a federal or military court, or a foreign country's court was classified as a sex offender or sexual predator based on the listed Illinois offense to which their offense was "substantially equivalent." 730 ILCS 150/2(A), 2(C), 2(E).[2] The local police department that registered the offender determined the substantially equivalent Illinois offense (or sometimes asked the State Police to make the determination) and entered it into the statewide data system for that offender. Doc. 33-3 at 21:17-22:11, 32:3-9. It can be "complicated" to determine which Illinois offense is substantially equivalent to another jurisdiction's offense. *Id.* at 25:23-26:5. This determination can involve researching the facts of the offense and comparing the elements of offenses under another jurisdiction's criminal code to the elements of the Illinois offenses listed in the Registration Act. *Id.* at 23:16-24:5.

In 2012, the Illinois General Assembly added section 2(E-10) to the Registration Act, which expanded the definition of "sexual predator" to include any person "required to register in another State due to a conviction, adjudication[,] or other action of any court triggering an obligation to register as a sex offender, sexual predator, or substantially similar status under the laws of that State." Ill. P.A. 97-578 (eff. Jan. 1, 2012); *see* 730 ILCS 150/2(E-10). Thus, some individuals who previously would have been classified as "sex offenders" based on their other-state

---

[2] Some parts of the Registration Act use the term "substantially equivalent" and other parts use the term "substantially similar." The State Police do not consider there to be a difference between those terms for purposes of interpreting or administering the Registration Act. Doc. 33-3 at 21:1-16. For brevity, this brief uses only the term "substantially equivalent."

convictions are now classified as "sexual predators" and must register for life. *See* 730 ILCS 150/2(A), 2(C), 2(E), 2(E-5), 2(E-10), 7.

Section 2(E-10) also imposes registration duties on individuals who previously would not have any registration duty if they moved to Illinois. For example, a person subject to a deferred adjudication in Texas might be required to register as a sex offender there without being convicted. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5), 62.051(a). Before 2012, if that person were to move to Illinois, they would not have had to register in Illinois despite their Texas registration duty due to the lack of a "conviction" in Texas. *See* 730 ILCS 150/2(A)(1)(a), 2(C), 2(E)(1), 2(E-5). Similarly, a person initially charged with a sex offense in Minnesota might ultimately plead guilty to a lesser non-sexual offense but still have to register as a sex offender there because sex offender registration in Minnesota depends on the offense charged, not the offense of conviction. *See* Minn. Stat. § 243.166(1b)(a)(1). Before 2012, if that person were to move to Illinois, they would not have had to register in Illinois despite their Minnesota registration duty because the Minnesota "conviction" would have been for an offense without a substantial equivalent listed in the Registration Act. *See* 730 ILCS 150/2(A)(1)(a), 2(C), 2(E)(1), 2(E-5). Now, under section 2(E-10), both offenders would have to register in Illinois because they would be required to register in those respective States. *See id.* § 2(E-10).

Thus, under section 2(E-10), local police departments are relieved from conducting substantial equivalence analyses for those arriving in Illinois with a duty to register in another State. Instead, the local police department can enter "out-of-

state duty to register" into the statewide data system for such offenders. Doc. 33-3 at 32:10-14. But local police departments still must conduct substantial equivalence analyses for people convicted in federal, military, or foreign courts and for arriving offenders who have committed sex crimes in other States but are not required to register as sex offenders under the laws of those States. *Id.* at 35:14-36:20.

**This Action**

Cross, a massage therapist who worked in Missouri, was arrested for having nonconsensual sexual contact with a client. Doc. 33-1 at 1. He pleaded guilty in Missouri state court to committing criminal sexual abuse in the second degree, which would have required him to register as a sex offender in Missouri. *Id.*; *see* Mo. Rev. Stat §§ 566.101, 589.400(4)(1), 589.414(5)(c). After his release, he moved to Illinois. Doc. 33-1 at 1. His Missouri registration duty designated him a "sexual predator" under section 2(E-10) of the Registration Act. *See* 730 ILCS 150/2(E-10).

Cross then brought this action against Kelly on behalf of a proposed class of Illinois residents classified as sexual predators solely by application of section 2(E-10), claiming that section 2(E-10) violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. Doc. 1 at 8-9.[3] By way of relief, he sought a declaratory judgment holding section 2(E-10) unconstitutional and an injunction against its enforcement. *Id.* at 9-10.

---

[3] Cross brought only a "procedural due process" claim. Doc. 1 at 8-9. He did not claim that section 2(E-10) violated his fundamental rights under the "substantive due process" doctrine. *See Christensen v. County of Boone*, 483 F.3d 454, 462 (7th Cir. 2007) (*per curiam*) (some deprivations of life, liberty, or property are so egregious that "no amount of process" can justify them).

Cross claimed that section 2(E-10) violated the Equal Protection Clause by discriminating against people based on whether they had a registration duty in another State. *Id.* at 8. Cross argued that it was irrational to classify Illinois offenders without other-state registration duties as either sex offenders or sexual predators based on the specific offense they committed while applying the sexual predator designation uniformly to offenders with other-state registration duties regardless of the specific offense they committed. *Id.*

Cross claimed that section 2(E-10) violated the Due Process Clause by applying a stigmatizing label without providing an opportunity to contest its application. *Id.* at 9. He admitted that section 2(E-10) by its own terms applied to him but claimed a due process right to challenge his designation as a sexual predator on the ground that he did not meet the criteria in sections 2(E) or 2(E-5) of the Registration Act, the alternate definitions of "sexual predator" that apply to Illinois offenders without other-state registration duties. *Id.* at 4, 9; *see* 730 ILCS 150/2(E), 2(E-5).

Kelly answered the complaint, Doc. 6, and the parties cross-moved for summary judgment, Docs. 33, 35. While those motions were pending, the district court certified a class comprised of "adult offenders residing in Illinois who are currently or in the future classified as 'sexual predators' on the Illinois Sex Offender Registry pursuant to 730 ILCS 150/2(E-10) solely because they were convicted of an offense in another [S]tate." Doc. 37 at 12.[4]

[4] The district court modified Cross's proposed class definition to exclude juveniles and non-Illinois residents. Special provisions of the Registration Act apply to "out-of-state students" and "out-of-state employees" who study or work in Illinois but reside

The district court later denied plaintiffs' motion for summary judgment and granted Kelly's motion. A1-14. As to the equal protection claim, the district court first determined that section 2(E-10) did not discriminate based on a protected trait and so triggered only rational basis review. A5. The court then reasoned that section 2(E-10)'s differential treatment of offenders based on whether they had an other-state registration duty was rationally related to Illinois's legitimate interest in public safety. A6-10. As to the procedural due process claim, the district court concluded that, even assuming they were deprived of a liberty interest, plaintiffs received all the process they were due when they were convicted in other States, the triggering events for their Illinois registrations. A13. Thus, they were not entitled to additional procedures to establish other facts. A10-13.

Plaintiffs appealed. Doc. 45.

---

in other States, *see* 730 ILCS 150/3(a-5), and to juveniles, *see* 730 ILCS 150/3-5. The district court found that because Cross was an adult and an Illinois resident, his claims would not be typical of those of a class that included non-resident offenders and juvenile offenders. Doc. 37 at 7-9.

## SUMMARY OF THE ARGUMENT

This court should affirm the district court's decision granting summary judgment for Kelly on plaintiffs' equal protection claim. Because section 2(E-10) does not classify based on a protected trait, it complies with the Equal Protection Clause so long as any conceivable rational basis exists for the differential treatment between offenders with and without other-state registration duties. Section 2(E-10) rationally advances Illinois's legitimate public safety interest in maintaining a comprehensive sex offender registry by expanding its coverage to offenders who previously were not covered and reducing the potential for error and the administrative burden associated with making equivalence determinations between Illinois's criminal code and the criminal codes of 49 other states. Because Illinois's legislature rationally could have thought these concerns justified section 2(E-10), it was irrelevant whether the legislature could have had another illegitimate motive.

This court also should affirm the district court's decision granting summary judgment for Kelly on plaintiffs' due process claim. Even assuming plaintiffs were deprived of a liberty interest covered by the Due Process Clause, they were not entitled to additional process to establish facts irrelevant to that deprivation. The sole criterion that determines whether section 2(E-10) requires someone to register as a sexual predator is the existence of an other-state registration duty, and plaintiffs do not contest that they meet that criterion. Plaintiffs' other-state registration duties were established through procedurally safeguarded criminal proceedings in other States. Further, plaintiffs do not claim that they lacked other-state

registration duties and were designated as sexual predators by mistake. Thus, they received all the process they were due.

## ARGUMENT

This court should affirm the district court's decision granting summary judgment for Kelly. The court reviews a district court's ruling on cross-motions for summary judgment *de novo*. *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1308 (7th Cir. 2025). It may affirm summary judgment on any basis apparent from the record, even one on which the district court did not rely. *See Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023).

Summary judgment is proper when there are no genuine disputes of material fact and the undisputed facts leave the moving party entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party would not have the burden of proof at trial, its only burden at the summary judgment stage is to point out that there is an absence of evidence to support the non-moving party's case. *Chatman v. Bd. of Educ. of Chi.*, 5 F.4th 738, 744 (7th Cir. 2021). The non-moving party then must respond by producing admissible evidence establishing a genuine dispute of material fact. *Id.* A party who *would* have the burden of proof at trial, however, can obtain summary judgment only by producing evidence definitively "rul[ing] out the prospect" that a jury could return a verdict for the non-moving party. *Harnishfeger v. United States*, 943 F.3d 1105, 1116 (7th Cir. 2019) (cleaned up). The same standards apply when the court resolves cross-motions for summary judgment. *Wood*, 126 F.4th at 1308.

## I. Section 2(E-10) complies with the Equal Protection Clause.

Section 2(E-10) complies with the Equal Protection Clause because it rationally relates to Illinois's legitimate public safety interest in creating a comprehensive statewide sex offender registry.

### A. Rational basis review applies.

As the district court correctly concluded, A5, and as plaintiffs concede, *see* AT Br. 14-25, plaintiffs' equal protection claim triggers only rational basis review. The Equal Protection Clause forbids a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It does not prevent a State from classifying among groups of people but rather requires that such classifications be justifiable. The level of justification required varies greatly depending on the type of classification made.

Race-based and certain related classifications, which are inherently suspect, trigger strict scrutiny. *Johnson v. California*, 543 U.S. 499, 505-06 (2005). Strict scrutiny places the burden on the government to show that the classification is "narrowly tailored" to serve a "compelling" non-discriminatory interest. *Id.* at 505 (cleaned up). Demanding this tight fit between ends and means serves to "smoke out" the types of invidious discrimination that the Equal Protection Clause was designed to eliminate. *See id.* at 506 (cleaned up). Sex-based and other quasi-suspect classifications trigger intermediate scrutiny. *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 768 (7th Cir. 2023). Intermediate scrutiny requires that the classification "substantially" relate to an "important" government interest. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) (cleaned up).

Non-suspect classifications, on the other hand, trigger only rational basis review. *Ruiz v. Pritzker*, 162 F.4th 886, 890 (7th Cir. 2025). Rational basis review requires no more than a "rational relationship" between a policy's "differential treatment" and "any conceivably legitimate government purpose." *Id.* The court presumes the challenged policy is constitutional and assigns the plaintiff the "weighty burden" of "negat[ing] every . . . basis [that] might support" it. *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013) (cleaned up). The basis need not appear in the record so long as it finds "some footing in the realities of the subject addressed by the legislation." *Id.* (cleaned up). The State also need not "produce evidence" to show that the classification is rational. *Id.* (cleaned up). Rather, the court will uphold the challenged policy if it can "reasonably conceiv[e]" of any "state of facts" that could rationally justify it. *Id.* (cleaned up).

"Legitimate" state interests include many interests that courts might not consider "compelling" or "important." For example, administrative convenience often is not a compelling state interest that can withstand strict scrutiny, *see, e.g.*, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989), but is a legitimate one that can pass rational basis review, *see, e.g.*, *Ruiz*, 162 F.4th at 892. Additionally, the "legislature . . . need not actually articulate" the legitimate purpose, *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993), and the court will not "search for the legislature's motive," *Walker*, 705 F.3d at 653. The court simply decides whether "the statute, as written, furthers a legitimate government objective." *Walker*, 705 F.3d at 653. The state interest need not concern an existing problem. Rather, it may be "based on

rational speculation" about future problems that could arise, even if "unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 318-19 (1993); *see Ostrowski v. Lake County*, 33 F.4th 960, 966 (7th Cir. 2022) (rational basis review "not a license for courts to judge the wisdom, fairness, or logic" of a State's policy choices) (cleaned up).

Moreover, a classification can have a rational relationship to a state interest even if the plaintiff can demonstrate a "superior" alternative way to achieve that interest. *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012). Though a policy that is "overinclusive" or "underinclusive" relative to its proffered rationale will sometimes fail a narrow tailoring analysis, rational basis review tolerates such "imperfect means-ends fits." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019). The task of making a policy more effective or fair falls to the "democratic branches," not to "the courts." *Ostrowski*, 33 F.4th at 967. Thus, even if the policy could be immediately improved to more effectively achieve its goal, the State need not make that change. Rather, it may "regulate one step at a time, addressing itself to the phase of the problem which seems most acute" at the time. *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489 (1955).

This court recently applied rational basis review to uphold Indiana's sex offender registration law against a similar equal protection challenge. In *Hope v. Comm'r of Ind. Dep't of Corr.*, 984 F.3d 532, 534 (7th Cir. 2021), a panel of this court affirmed a decision granting summary judgment for the plaintiffs on a challenge to Indiana's law based on the federal constitutional right to interstate travel. The *en*

*banc* court later vacated that decision and reversed the district court. *Hope v. Comm'r of Ind. Dep't of Corr.*, 9 F.4th 513, 519-20 (7th Cir. 2021).[5] However, it remanded for the district court to consider the plaintiffs' equal protection claim, which the district court had not yet addressed. *Id.* at 520. When the district court ruled for the plaintiffs on that claim, this court reversed again. *Hope v. Comm'r of Ind. Dep't of Corr.*, 66 F.4th 647, 649 (7th Cir. 2023).

The plaintiffs in *Hope* were Indiana residents who committed sex offenses before Indiana's registration law applied to them and had incurred sex offender registration duties in other States before relocating to Indiana. *Id.* at 649-50. Indiana's supreme court had interpreted the state constitution to prevent the Indiana registration law from applying retroactively based on offenses committed before the statute's enactment. *Id.* However, it also concluded that the state constitution did not limit the application of the law's "other-jurisdiction provision," which required any person to register if they had a registration duty in another State. *Id.* at 649. As a result, Indiana's law differentiated among offenders who committed sex offenses before the law applied to them, requiring people in that group to register only if they had an out-of-state registration duty. *Id.* at 651. The plaintiffs claimed that this classification was irrational because it yielded disparities between people who committed identical crimes and were equally dangerous. *Id.*

---

[5] Unlike the plaintiffs in *Hope*, plaintiffs here have never asserted a right-to-travel claim, *see* Doc. 1 at 8-9; Doc. 33 at 19-38; AT Br. 14-30, and thus have waived any such claim, *see Rodgers v. Rankin*, 99 F.4th 415, 420 (7th Cir. 2024).

This court disagreed, explaining that the differential treatment was rationally related to Indiana's "legitimate interest in seeking to register as many sex offenders as [its] state constitution permits." *Id.* Noting that "[r]ational basis review tolerates classifications that may be overinclusive or underinclusive," the court added that Indiana could rationally differentiate between two groups sex offenders even if they posed identical risks. *Id.* As the court elaborated, "[r]equiring offenders who are already subject to the burdens of registration elsewhere rationally promotes public safety through the maintenance of a sex-offender registry that is as complete as the [state constitution] permits." *Id.* It was not "irrational" for Indiana to do so, even if state constitutional constraints "resulted in an imperfect classification system." *Id.*

**B. Section 2(E-10) passes rational basis review.**

Like the other-jurisdiction provision of Indiana's law challenged in *Hope*, section 2(E-10) of Illinois's Registration Act passes rational basis review. Illinois has a "public safety" interest equally as strong as Indiana's in maintaining a sex offender registry "that is as complete" as possible. *See id.* And requiring a person to register based on that person's "duty to register in another jurisdiction," as section 2(E-10) does, "rationally relate[s] to advancing that interest," *see id.* at 649, 651; 730 ILCS 150/2(E-10), by expanding the Registration Act's coverage to offenders who previously were not covered, *see supra* p. 6 (describing examples), and by reducing the ambiguity and risk of error inherent in substantial equivalence analyses. That remains true even if as a result, the Registration Act sometimes "treat[s] . . .

differently" people "convicted of the same exact offense at the same time" who "may be considered equally dangerous." *See Hope*, 66 F.4th at 651.

First, it is at least conceivable that a person might have to register as a sex offender in another State without a conviction for an offense substantially equivalent to an Illinois offense listed in the Registration Act. *See supra* p. 6 (describing examples). In that case, Illinois would have a legitimate interest in registering that person even if it would not require a person who committed the same crime in Illinois to register. *See Hope*, 66 F.4th at 651 (rational to differentiate between offenders "convicted of the same exact offense at the same time" based on existence of out-of-state registration duty). Though plaintiffs stress section 2(E-10)'s "overinclusiveness" and "mismatch between ends and means," AT Br. 21, rational basis review tolerates precisely such "imperfect means-ends fits," *St. Joan*, 919 F.3d at 1010; *cf. Quinn v. Millsap*, 491 U.S. 95, 106-09 (1989) (invalidating state constitutional provision requiring land ownership to serve on local government board because land ownership was a wholly irrelevant proxy for civic competence).[6] The fact that most people with other-state registration requirements who move to Illinois would be required to register under the Registration Act's substantial equivalence provisions, *see* AT Br. 24, does not make it irrational for Illinois to adopt a "belt and

---

[6] Plaintiffs' cited case, *Califano v. Jobst*, 434 U.S. 47, 55 (1977), does not stand for the proposition that a legislative classification might fail rational basis review when it focuses too much on "selected, atypical examples" at the expense of cases "typical of the affected classes." *See* AT Br. 24. *Califano* rejected the plaintiff's equal protection claim, and the quoted text described a flaw in the plaintiff's legal theory, not a flaw in the government's proffered rational basis. 434 U.S. at 54-58.

suspenders" approach to ensuring that its sex offender registry is as complete as possible, *see* A9 (cleaned up); *Hope*, 66 F.4th at 651 (State has "a legitimate interest in seeking to register as many sex offenders as the state constitution permits"); *see also Beach*, 508 U.S. at 315 (classification may be "based on rational speculation unsupported by evidence or empirical data").

Second, section 2(E-10) reduces the extent to which local police departments must make substantial equivalence determinations, which can involve researching the facts of offenses and comparing the elements of the statutes listed in the Registration Act to the criminal codes of 49 other States. *See* Doc. 33-3 at 23:16-26:10. Given the ambiguities inherent in making such comparisons and the potential for administrative error given the decentralized nature of the process, the substantial equivalence regime conceivably might result in some offenders who should be designated sexual predators being designated only sex offenders. Thus, Illinois may rationally "decide[ ] that its own process for sorting . . . offenders" sufficiently determines their relative risk while "err[ing] on the side of safety" and "declin[ing] to rely on the same sorting process for offenders from other jurisdictions." *See Doe v. Peterson*, 43 F.4th 838, 842 (8th Cir. 2022) (statute required Nebraska juvenile delinquents to register only if tried as adults but required all juvenile delinquents arriving from other States to register).

In *Doe*, the Eighth Circuit rejected the plaintiffs' argument that the Equal Protection Clause obligated Nebraska to "conduct a 'substantial equivalence' analysis for offenders who [were] required to register in another jurisdiction" and then

"eliminate the registration requirement for those whose offenses [were] not substantially equivalent to a Nebraska registration offense," *id.*, as plaintiffs here suggest Illinois must do, *see* AT Br. 23. As the court explained, Nebraska could rationally decide, "[g]iven the varying criteria among" other States' sex offender registration schemes, to adopt a different rule for in-state and out-of-state juvenile offenders. *Doe*, 43 F.4th at 842-43. Like Nebraska, Illinois may rationally differentiate between classes of offenders who create categorically different administrative burdens and thus may impose a uniform rule for offenders whose registration duties arise in other States, even if that sometimes yields "harsher consequences" for "out-of-state offenders than [Illinois] imposes on its own residents convicted of identical conduct." *See* AT Br. 24; *cf. Pryor v. Brennan*, 914 F.2d 921, 925-26 (7th Cir. 1990) (administrative convenience justified District of Columbia applying its own more generous local good time credit scheme to offenders it transferred to other States' prisons but harsher federal scheme to offenders it transferred to federal prisons).

Further, given that a uniform rule is justified for offenders with registration duties in other States, it is rational for Illinois to apply the "mo[re] severe" sexual predator designation to all such offenders instead of the less serious "sex offender" designation. *See* AT Br. 22. Illinois has a legitimate public safety interest in having the most comprehensive sex offender registry possible, *see Hope*, 66 F.4th at 651, and may rationally choose to apply its more serious, rather than less serious, sex offender classification in cases where it makes sense to have a uniform rule. Adopting a

uniform rule classifying all offenders with other-state registration duties only as sex offenders would harm Illinois's public safety interest by imposing a lighter registration duty on some offenders than Illinois would impose for an equivalent offense under Illinois law. Thus, it is beside the point whether "individuals with out-of-state sex offense convictions are more dangerous, more likely to reoffend, or pose a greater risk to children." *See* AT Br. 21. As this court explained in *Hope*, "[e]ven if a risk posed by two groups of offenders is identical, a [S]tate may have a rational reason for treating them differently." 66 F.4th at 651. And the State's reason may be "based on its [own] interests" rather than the nature of the offense or characteristics of the offender. *See Ruiz*, 162 F.4th at 892.

Plaintiffs insist that section 2(E-10) is irrational because, they claim, conducting substantial equivalence analyses is an "easily available alternative" that "fully serve[s]" Illinois's "interests." *See* AT Br. 22-23. But this alternative would not "fully serve[ ]" Illinois's interests. *See id*. at 23. As discussed, it has the potential to erroneously designate some people who should be classified as sexual predators only as sex offenders. *See* Doc. 33-3 at 25:23-26:10 (determining substantially equivalent offenses can be "complicated" and involves comparing "elements" of other-state offenses to those of Illinois offenses). Moreover, it would increase the administrative burden on the State. *See Ruiz*, 162 F.4th at 892 ("[A]voiding administrative burden is a legitimate government interest."); *Doe*, 43 F.4th at 842-43 (rejecting argument that "Nebraska should be required to conduct a 'substantial equivalence' analysis for offenders who are required to register in

another jurisdiction" and explaining that "Nebraska may permissibly consider the administrative burdens of adopting a different registration scheme"). And even assuming plaintiffs "have found a superior system" to the one the Illinois General Assembly chose, "the Constitution does not require [Illinois] to draw the perfect line nor even draw a line superior to some other line it might have drawn." *Armour*, 566 U.S. at 685. Because section 2(E-10) "reflects *a* rational approach to the problem," the existence of an alternative approach is "immaterial." *See Pryor*, 914 F.2d at 925 (emphasis in original) (cleaned up).

Plaintiffs also attempt to distinguish *Hope* on the ground that section 2(E-10) in some cases "escalates the severity and duration" of a registration duty instead of just "preserv[ing] an existing [one] across state lines." AT Br. 14. Though this court described the challenged feature of Indiana's law as "merely extend[ing]" the "existing duty" of an offender "already obligated to register elsewhere," *Hope*, 66 F.4th at 651, Indiana's other-jurisdiction provision in fact also caused some new residents to be treated more harshly than they were treated in their prior States of residence. For example, one of the plaintiffs was required to register "only for ten years" in Illinois, where he previously resided, but had "to register for life" in Indiana after relocating there due to differences between Illinois's and Indiana's sex offender registration schemes. *Hope*, 984 F.3d at 541. Thus, Indiana did not just "preserve" that plaintiff's "existing registration obligation" but rather "escalate[d] [its] severity and duration" beyond what Illinois law previously imposed on him, thereby making him "worse off for crossing state lines." *See* AT Br. 14, 16. This

court nonetheless concluded that this differential treatment passed rational basis review. *Hope*, 66 F.4th at 651.

Finally, plaintiffs cannot establish that section 2(E-10) is irrational by pointing to an allegedly illegitimate purpose of "deterring migration of unwanted residents" supposedly "conceded in testimony and briefing." *See* AT Br. 17, 19. Under rational basis review, the challenged classification must be upheld if the "legislature might have" had any legitimate reason to adopt it. *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 24 F.4th 640, 647 (7th Cir. 2022). If the court determines any such reason exists, the inquiry ends. *Lopez-Ramos v. Barr*, 942 F.3d 376, 381 (7th Cir. 2019). The court will not strike down the classification based on the possibility of an alternate "illicit legislative motive," *Walker*, 705 F.3d at 652 (cleaned up), much less based on the speculation of officials in the State's executive branch about what its legislative branch's motive might have been. Regardless, a State's desire to avoid "becoming a safe haven for offenders attempting to evade [registration] obligation[s] in other [S]tates" does not invalidate a sex offender registration law facially agnostic to prior residency, *see Hope*, 66 F.4th at 650 (cleaned up), even if that law "incidentally burden[s] travel to or from the [S]tate," *Hope*, 9 F.4th at 528.

Because section 2(E-10) does not classify based on a protected trait and plaintiffs did not meet their burden to "negate every conceivable basis which might support" it, *see St. Joan*, 919 F.3d at 1010 (cleaned up), this court should affirm the district court's decision granting summary judgment for Kelly on plaintiffs' equal protection claim.

## II. Section 2(E-10) complies with the Due Process Clause.

The Due Process Clause forbids a State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The amount of process "due" depends on the seriousness of the deprivation, the risk of error in the government's existing process, the likely reduction to that risk from additional safeguards, and the administrative burden those safeguards would impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). But as the Supreme Court explained in *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003), even if a plaintiff has been "deprived of a liberty interest, due process does not entitle [them] to a hearing to establish a fact that is not material under" the state law that caused the alleged deprivation. As a result, once a person's sex offender "registration status" in another State is "established after a procedurally safeguarded proceeding" — their criminal case in the other State — they are "not entitled to pre-registration process" when they move to a new State that requires registration based on the fact of their "registration status in another [S]tate." *Murphy v. Rychlowski*, 868 F.3d 561, 566-67 (7th Cir. 2017).

Contrary to plaintiffs' contention, *see* AT Br. 25-27, the district court correctly concluded that *Conn. Dep't of Pub. Safety* barred their procedural due process claim, *see* A12-13. Even assuming plaintiffs' classification as sexual predators deprived them of a liberty interest, *see* AT Br. 27-29, they received all the process they were due through the process provided in their underlying criminal cases in other States, *see Murphy*, 868 F.3d at 566-67. These other-state convictions established their

other-state registration duties, the sole determinant of whether a person is a sexual predator under section 2(E-10). *See* 730 ILCS 150/2(E-10). The other facts that plaintiffs seek an opportunity to prove — facts that determine a person's registration status "[o]utside the context of [s]ection [2](E-10)" like "the nature of [their] conduct" and "equivalence to Illinois law," AT Br. 26 — are "of no consequence" under section 2(E-10), *Conn. Dep't of Pub. Safety*, 538 U.S. at 7. In other words, plaintiffs have challenged only Illinois's "legal determination" that they belong "in the most severe category of registrants," AT Br. 26, but they have no procedural due process right to such a challenge, *Murphy*, 868 F.3d at 566.

Further, plaintiffs did not challenge "errors" or "mistakes" in Illinois's sex offender registry. *Cf. Schepers v. Comm'r, Ind. Dep't of Corr.*, 691 F.3d 909, 914 (7th Cir. 2012). The State Police have an informal procedure for correcting registry errors, *Kitterman v. City of Belleville*, 66 F.4th 1084, 1093 (7th Cir. 2023), but plaintiffs submitted no evidence that they ever tried to use it and thus created no triable dispute about whether that process is adequate, *see Chatman*, 5 F.4th at 744 (plaintiff has burden to produce evidence creating "genuine" dispute regarding material fact to survive summary judgment). Regardless, this court previously rejected a procedural due process challenge to the adequacy of the State Police's informal way of correcting registry errors. *Kitterman*, 66 F.4th at 1093 (plaintiff "file[d] several letters with" State Police and "received a response . . . explaining that there was no error and the registry requirements remained applicable to [him]").

Finally, plaintiffs cannot distinguish *Conn. Dep't of Pub. Safety* on the ground that the deprivation here was somehow more serious than the deprivation in that case. *See* AT Br. 26-27. Nothing in *Conn. Dep't of Pub. Safety* suggested that the result would have changed if Connecticut labelled the plaintiff with a more stigmatizing term or imposed harsher sex offender registration consequences on him. On the contrary, the dispositive issue was that the fact he sought to prove was not "relevant" to the deprivation that Connecticut's legislature "decided" to impose, regardless of how severe the deprivation was. *Conn. Dep't of Pub. Safety*, 538 U.S. at 7. Similarly here, Illinois's legislature has decided that an other-state registration duty alone suffices to designate a person as a sexual predator. 730 ILCS 150/2(E-10). Because plaintiffs failed to show that this legislative decision itself "conflict[s] with a provision of the Constitution," they were not entitled to process to prove facts other than those that Illinois's legislature has decided are relevant. *See Conn. Dep't of Pub. Safety*, 538 U.S. at 7; *supra* § I (section 2(E-10) does not violate Equal Protection Clause). To the extent that plaintiffs' "procedural due process claim," *see* AT Br. 25, is "actually a substantive challenge to [Illinois's] statute recast in procedural due process terms," plaintiffs have waived "any reliance on the substantive component of the Fourteenth Amendment's protections" by clarifying at every stage of this case that their "challenge is strictly a procedural one," *see Conn. Dep't of Pub. Safety*, 538 U.S. at 8 (cleaned up); Doc. 1 at 8-9; Doc. 33 at 30-38; AT Br. 25-30. Accordingly, any substantive due process question "is not properly before" this court. *Conn. Dep't of Pub. Safety*, 538 U.S. at 8.

Because the facts plaintiffs sought to prove were irrelevant to the alleged deprivation and plaintiffs otherwise received all the process they were due, this court should affirm the district court's decision granting summary judgment for Kelly on plaintiffs' procedural due process claim.

## CONCLUSION

For these reasons, Defendant-Appellee Brendan Kelly requests that this court affirm the district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendant-Appellee
Brendan Kelly

/s/ Matthew J. Freilich
**MATTHEW J. FREILICH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-1667 (office)
(773) 519-2935 (cell)
Matthew.Freilich@ilag.gov

June 5, 2026

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in 12-point Century Schoolbook BT font using Microsoft Word for Microsoft 365 MSO. I further certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 6,715 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

/s/ Matthew J. Freilich
MATTHEW J. FREILICH
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-1667 (office)
(773) 519-2935 (cell)
Matthew.Freilich@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I certify that on June 5, 2026, I electronically served the foregoing Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that all other participants in this appeal are registered CM/ECF users and thus will be served by the CM/ECF system.

Adele D. Nicholas
adele@civilrightschicago.com

Mark G. Weinberg
mweinberg@sbcglobal.net

/s/ Matthew J. Freilich
MATTHEW J. FREILICH
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-1667 (office)
(773) 519-2935 (cell)
Matthew.Freilich@ilag.gov